UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| BENNIE JONES, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FAIRPOINT COMMUNICATIONS, INC. | ) |
| | ) |
|    Defendant. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**5 M.R.S. § 4572 (MHRA Disability Discrimination)**
**5 M.R.S. § 4633 (MHRA Retaliation and Coercion)**
**42 U.S.C. § 12112 (ADA Disability Discrimination)**
**42 U.S.C. § 12203 (ADA Retaliation and Coercion)**
**26 M.R.S. § 833 (MWPA Retaliation)**

NOW COMES Plaintiff BENNIE JONES (hereinafter "Mr. Jones" or "Plaintiff") and, by counsel, makes the following Complaint against Defendant FAIRPOINT COMMUNICATIONS, INC. (hereinafter "FairPoint" or "Defendant"):

**PARTIES**

1. Plaintiff Bennie Jones resides in Biddeford, York County, Maine.

2. Upon information and belief, Defendant is incorporated under Delaware law with headquarters in Charlotte, North Carolina. Defendant maintains field and technical operations in several states, including Maine.

3. At all times material herein, Defendant employed more than 500 employees.

4. At all times material herein, Defendant grossed (annually) more than $500,000 while engaged in interstate commerce.

**JURISDICTION**

5. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1332.

## **ALLEGATIONS COMMON TO ALL COUNTS**

6. Plaintiff Bennie Jones has been (and remains) employed by FairPoint as a Supply Service Technician (SST) for seventeen years. His job duties include installation and maintenance of telephone and data lines to commercial and residential customers. Plaintiff's job required him to drive a "bucket truck" to install phone/data lines.

7. A FairPoint "bucket truck" is a heavy-duty vehicle equipped with a hydraulic lift, or "bucket", enabling the operator access to elevated telephone or data lines.

8. Plaintiff's job was based entirely in Maine.

9. Because of the hydraulic lift, Plaintiff was not required to climb ladders.

10. In June 2012, Plaintiff was diagnosed with early onset Parkinson's Disease.

11. On June 19, 2012, FairPoint ordered Plaintiff to submit to a physical examination at WorkWell in Biddeford for purposes of renewing his U.S. Department of Transportation certification (the "DOT Exam"), which authorizes drivers to engage in interstate commercial motor vehicle transportation.

12. DOT Certification is <u>not</u> a federal mandate for <u>intra</u>state drivers like Plaintiff.

13. Also on June 19, 2012, a FairPoint manager reported he witnessed Plaintiff "shaking" on the job.

14. On June 22, 2012, Plaintiff and FairPoint were notified by WorkWell that Plaintiff did not pass the DOT Exam.

15. Also on June 22, 2012, FairPoint relieved Plaintiff of his bucket truck duties and assigned him to work on an "SES truck", which is essentially a commercial van equipped with a manual extension ladder.

16. Plaintiff was regularly required to climb ladders while on the SES truck.

17. Plaintiff's new assignment on the SES truck resulted in a much more restricted schedule and prohibited him from working overtime.

18. Also on June 22, 2012, AllOne, a third-party health and benefits administrator for Defendant, wrote Plaintiff to request copies of his medical records. FairPoint personnel later made several requests for Plaintiff's medical records and made several inquiries as to the nature or severity of Plaintiff's disability.

19. Plaintiff did not agree to provide AllOne or FairPoint with his medical records.

20. On June 25, 2012, Plaintiff's Primary Care Physician ("PCP") wrote FairPoint to state that Plaintiff was able to perform all required duties, including working in the bucket truck.

21. On July 20, 2012, FairPoint managers ordered a "ride along" with Plaintiff based on their "observations" and "safety concerns".

22. On July 20, 2012, FairPoint management concluded that Plaintiff could not perform the essential functions of his job.

23. On August 3, 2012, after passing the "DOT Exam" performed by his PCP, Plaintiff notified FairPoint that he was once again cleared to work on a bucket truck.

24. Despite this medical "clearance", FairPoint continued to deny Plaintiff access to the bucket truck and continued to prohibit him from working overtime.

25. On August 8, 2012, Plaintiff agreed to participate in a "Fit for Duty" screening by a physical therapist hired by FairPoint. The physical therapist concluded that Plaintiff could perform all essential functions except for "climbing ladders" (which, ironically, he was <u>not</u> required to do while working on the bucket truck but <u>was</u> required to do on the SES truck).

26. FairPoint refused to transfer Plaintiff from the SES truck and prohibited Plaintiff from operating a bucket truck until management observed "improved motor skills".

27. On October 24, 2012, Plaintiff's union steward filed a grievance on his behalf pursuant to the applicable collective bargaining agreement (CBA). The grievance alleges that FairPoint violated the CBA by unfairly discriminating against Plaintiff based on his disability. The matter has not yet been presented to an arbitrator at an arbitration hearing.

28. On March 7, 2013, Plaintiff again passed the DOT Exam and was again cleared by his PCP to work on the bucket truck. The DOT certification stated that Plaintiff's condition was managed by medication and did not impair his ability to drive or operate the bucket truck.

29. On April 23, 2013, Plaintiff agreed to participate in a second "Fit for Duty" examination conducted by the same physical therapist. This time the physical therapist found Plaintiff was able to perform all essential functions of his job without restrictions.

30. On April 24, 2013, FairPoint authorized Plaintiff to return to his duties on the bucket truck.

31. On April 28, 2013, one of Plaintiff's supervisors informed him that she was pulling Plaintiff from his bucket truck duty without any explanation for her decision.

32. Although Plaintiff has been authorized to work overtime, he has not been authorized to return to bucket truck duties since April 28, 2013.

33. Plaintiff has lost income and otherwise sustained pecuniary and nonpecuniary losses, including but not limited to emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other damages.

34. On October 2, 2013, Plaintiff filed a charge of discrimination with the Maine Human Rights Commission.

35. On May 27, 2015, the Maine Human Rights Commission provided Plaintiff with a so-called "Right to Sue" letter authorizing him to file a civil action in state or federal court.

## COUNT I
## Disability Discrimination
## 5 M.R.S. § 4572 (MHRA)

36. Plaintiff hereby repeats, re-alleges, and incorporates by reference the foregoing paragraphs 1-35 of this Complaint.

37. The Maine Human Rights Act (MHRA) provides, in pertinent part, that an employer may not discriminate against a qualified individual with a disability because of his disability regarding the terms, conditions, or privileges of employment. It also prohibits employers from requiring employees to submit to a medical examination and making inquiries as to whether the employee is an individual with a disability or as to the nature or severity of the disability, unless the examination or inquiry is shown to be job-related and consistent with business necessity.

38. Plaintiff has suffered from a known disability or was disabled, had a record of a disability or was perceived to be a person with a disability. He is therefore in a class of individuals protected by the MHRA.

39. Plaintiff is, and has been since June 25, 2012, qualified to perform the essential functions of his job as a Supply Service Technician with or without reasonable accommodations.

40. Plaintiff worked exclusively in the State of Maine. He was therefore not required to engage in "interstate travel", and accordingly, there was no "business necessity" to require Plaintiff to submit to the DOT Exam in order to maintain certification or eligibility.

41. By removing Plaintiff from his position on the bucket truck, requiring him to submit to one or more "DOT Exams" and other unnecessary physical examinations, and refusing to reinstate him, all without justification or business necessity, Defendant unlawfully discriminated against Plaintiff on the basis of his disability, violated the MHRA, and took "adverse action" against Plaintiff.

42. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant and for all damages to which he may be entitled, including, but not limited to:

A. Injunctive relief ordering Defendant to reinstate Plaintiff to his position;
B. Back pay for lost wages and benefits and prejudgment interest therefrom;
C. Compensatory damages including, but not limited to, mental anguish, loss of dignity and other intangible injuries;
D. Punitive damages as determined by a jury;
E. An award of reasonable attorney's fees and all costs incurred herein; and
F. All other damages to which Plaintiff may be entitled.

## COUNT II
### Unlawful Retaliation
### 5 M.R.S. § 4633 (MHRA)

43. Plaintiff hereby repeats, re-alleges, and incorporates by reference the foregoing paragraphs 1-42 of this Complaint.

44. The MHRA provides, in pertinent part, that an employer may not discriminate against any individual because that individual has opposed any act or practice that is unlawful under the MHRA or because that individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under the MHRA.  It is also unlawful under the MHRA for a person to coerce, intimidate, threaten or interfere with any individual in the exercise or enjoyment of his civil rights or because he has exercised or enjoyed those rights.

45. Plaintiff, acting at all times in good faith, opposed Defendant's discriminatory acts or practices on multiple occasions, including but not limited to:

(a) opposing Defendant's requirement that he submit to a "DOT Exam" despite the fact that he did not cross state lines or require any DOT certification or clearance;

(b) opposing his transfer from a bucket truck to the SES truck and failure to reinstate him to the bucket truck once cleared by his doctor to perform his duties, after he passed the "DOT Exam", and despite the physical therapist's clearance;

(c) opposing Defendant's unfair restriction of Plaintiff's ability to work overtime;

(d) opposing Defendant's and its agents requests for medical records and inquiries into the nature and severity of Plaintiff's disability;

(e) opposing Defendant's unfounded "lay" opinions, decisions, and conclusions concerning Plaintiff's medical condition and fitness for duty and its rejection or ignorance of several qualified medical opinions and reports deeming Plaintiff qualified to perform the essential functions of his job;

(f) authorizing his union to file a grievance on his behalf; and

(g) filing a charge of discrimination with the Maine Human Rights Commission and participating in an investigation and proceeding under the MHRA

46. Plaintiff's actions amount to "protected activity" under the MHRA.

47. By removing Plaintiff from his position on the bucket truck, refusing to reinstate him, restricting his ability to work overtime, and changing the terms and conditions of Plaintiff's employment, Defendant unlawfully retaliated against Plaintiff in response to Plaintiff's protected activity, violated the MHRA, and otherwise took "adverse employment action" against Plaintiff.

48. There exists a causal connection between Plaintiff's protected activity and the adverse employment action he experienced.

49. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant and for all damages to which he may be entitled, including, but not limited to:

A. Injunctive relief ordering Defendant to reinstate Plaintiff to his position;
B. Back pay for lost wages and benefits and prejudgment interest therefrom;
C. Compensatory damages including, but not limited to, mental anguish, loss of dignity and other intangible injuries;
D. Punitive damages as determined by a jury;
E. An award of reasonable attorney's fees and all costs incurred herein; and
F. All other remedies and damages to which Plaintiff may be entitled.

**COUNT III**
**Unlawful Disability Discrimination**
**42 U.S.C. § 12110 (ADA)**

50. Plaintiff hereby repeats, re-alleges, and incorporates by reference the foregoing paragraphs 1-49 of this Complaint.

51. The Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008, provides in pertinent part that employers shall not discriminate against a qualified individual on the basis of disability regarding the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. It also prohibits employers from using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability unless the standard, test or other selection criteria is shown to be job-related for the position in question and is consistent with business necessity.

52. Plaintiff has suffered from a known disability or was disabled, had a record of a disability or was perceived to be a person with a disability. He is therefore in a class of individuals protected by the ADA.

53. Plaintiff is, and has been since June 25, 2012, qualified to perform the essential functions of his job as a Supply Service Technician with or without reasonable accommodations.

54. Plaintiff worked exclusively in the State of Maine. He was therefore not required to engage in "interstate travel", and accordingly, there was no "business necessity" to require Plaintiff to submit to the DOT Exam in order to maintain certification or eligibility.

55. By removing Plaintiff from his position on the bucket truck, requiring him to submit to one or more "DOT Exams" and other unnecessary physical examinations, and refusing to reinstate him, all without justification or business necessity, Defendant unlawfully discriminated against Plaintiff on the basis of his disability, violated the ADA, and took "adverse action" against Plaintiff.

8

56. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant and for all damages to which he may be entitled, including, but not limited to:

- A.  Injunctive relief ordering Defendant to reinstate Plaintiff to his position;
- B.  Back pay for lost wages and benefits and prejudgment interest therefrom;
- C.  Compensatory damages including, but not limited to, mental anguish, loss of dignity and other intangible injuries;
- D.  Punitive damages as determined by a jury;
- E.  An award of reasonable attorney's fees and all costs incurred herein; and
- F.  All other remedies and damages to which Plaintiff may be entitled.

### COUNT IV
### Unlawful Retaliation
### 42 U.S.C. § 12203 (ADA)

57. Plaintiff hereby repeats, re-alleges, and incorporates by reference the foregoing paragraphs 1-56 of this Complaint.

58. The Americans with Disabilities Act, as amended, provides in pertinent part that an employer may not discriminate against any individual because that individual has opposed any act or practice that is unlawful under the ADA or because that individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under the ADA.  It is also unlawful under the ADA for a person to coerce, intimidate, threaten or interfere with any individual in the exercise or enjoyment of his civil rights.

59. Plaintiff, acting at all times in good faith, opposed Defendant's discriminatory acts or practices on multiple occasions, including but not limited to:

- (a)  opposing Defendant's requirement that he submit to a "DOT Exam" despite the fact that he did not cross state lines or require any DOT certification or clearance;

- (b)  opposing his transfer to the SES truck and failure to reinstate him to the bucket truck once cleared by his doctor to perform his duties, after he passed the "DOT Exam", and despite the physical therapist's clearance;

(c) opposing Defendant's unfair restriction of Plaintiff's ability to work overtime;

(d) opposing Defendant's and its agents requests for medical records and inquiries into the nature and severity of Plaintiff's disability;

(e) opposing Defendant's "lay" opinions, decisions, and conclusions concerning Plaintiff's medical condition and fitness for duty and Defendant's rejection or ignorance of several qualified medical opinions and reports deeming him qualified to perform the essential functions of his job;

(f) opposing Defendant's unlawful acts and practices and its multiple violations of the CBA by authorizing this union steward to file a grievance; and

(g) filing a charge of discrimination with the Maine Human Rights Commission and participating in an investigation and proceeding under the MHRA

60. Plaintiff's actions amount to "protected activity" under the ADA.

61. By removing Plaintiff from his position on the bucket truck, refusing to reinstate him, restricting his ability to work overtime, and changing the terms and conditions of Plaintiff's employment, Defendant unlawfully retaliated against Plaintiff in response to Plaintiff's protected activity, violated the ADA, and otherwise took "adverse employment action" against Plaintiff.

62. There exists a causal connection between Plaintiff's protected activity and the adverse employment action he experienced.

63. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant and for all damages to which he may be entitled, including, but not limited to:

A. Injunctive relief ordering Defendant to reinstate Plaintiff to his position;
B. Back pay for lost wages and benefits and prejudgment interest therefrom;
C. Compensatory damages including, but not limited to, mental anguish, loss of dignity and other intangible injuries;
D. Punitive damages as determined by a jury;
E. An award of reasonable attorney's fees and all costs incurred herein; and
F. All other remedies and damages to which Plaintiff may be entitled.

## COUNT V
### Unlawful Retaliation
### 26 M.R.S. § 833 (MWPA)

64. Plaintiff hereby repeats, re-alleges, and incorporates by reference the foregoing paragraphs 1-63 of this Complaint.

65. The Maine Whistleblowers' Protection Act (MWPA) provides in pertinent part that no employer may discharge, threaten or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because (A) the employee, acting in good faith, or a person acting on behalf of the employee, reports orally or in writing to the employer or a public body what the employee has reasonable cause to believe is a violation of a state or federal law or rule, or (B) the employee, acting in good faith, or a person acting on behalf of the employee, reports to the employer or a public body, orally or in writing, what the employee has reasonable cause to believe is a condition or practice that would put at risk the health or safety of that employee or any other individual.

66. Plaintiff, acting at all times in good faith, reported to his employer what he reasonably believed were violations of laws or rules, to wit: his employer's discrimination against him on the basis of his disability.

67. Plaintiff, acting at all times in good faith, reported to his employer what he reasonably believed was a condition or practice that put at risk his health or safety and the health and safety of others, to wit: his objections to his employer placing him in an SES truck when his employer knew that Plaintiff could not safely climb ladders.

68. Plaintiff's union (IBEW), acting at all times in good faith and on his behalf, filed a grievance alleging that FairPoint violated the CBA and state and federal anti-discrimination laws by and through its discriminatory and retaliatory acts and practices against Plaintiff.

11

69. Plaintiff's and his union's actions amount to "protected activity" under the MHRA.

70. By removing Plaintiff from his position on the bucket truck, refusing to reinstate him, restricting his ability to work overtime, and changing the terms and conditions of Plaintiff's employment, Defendant unlawfully retaliated against Plaintiff in response to Plaintiff's protected activity, violated the MWPA, and otherwise took "adverse employment action" against Plaintiff.

71. There exists a causal connection between Plaintiff's protected activity and the adverse employment action he experienced.

72. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant and for all damages to which he may be entitled, including, but not limited to:

A. Injunctive relief ordering Defendant to reinstate Plaintiff to his position;
B. Back pay for lost wages and benefits and prejudgment interest therefrom;
C. Compensatory damages including, but not limited to, mental anguish, loss of dignity and other intangible injuries;
D. Punitive damages as determined by a jury;
E. An award of reasonable attorney's fees and all costs incurred herein; and
F. All other damages to which Plaintiff may be entitled.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all counts so triable.

DATED: July 7, 2015                    RESPECTFULLY SUBMITTED,

*/s/ James A. Clifford*
James A. Clifford, Esq.
CLIFFORD & CLIFFORD, LLC
62 Portland Rd., Suite 37
Kennebunk, ME 04043
(207) 985-3200
james@cliffordclifford.com